IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 22-CR-00242-GKF |
| BRANDON LEE MAYFIELD, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss Indictment on Second Amendment Grounds [Doc. 24] of defendant Brandon Lee Mayfield. For the reasons set forth below, the motion is denied.

## I.      Background/Procedural History

On November 3, 2006, Mr. Mayfield was convicted of Domestic Assault and Battery by Strangulation pursuant to Okla. Stat. tit. 21, § 644(H) in case no. CF-2006-4733 filed in the District Court in and for Tulsa County, State of Oklahoma. On May 29, 2009, Mr. Mayfield was convicted of Domestic Assault and Battery by Strangulation pursuant to Okla. Stat. tit. 21, § 644(H) in Tulsa County District Court Case No. CF-2009-2050. On October 17, 2013, Mr. Mayfield was convicted of Domestic Assault and Battery by Strangulation pursuant to Okla. Stat. tit. 21, § 644(J) in Tulsa County District Court Case No. CF-2013-4535. Finally, on March 26, 2018, Mr. Mayfield was convicted of Domestic Assault and Battery by Strangulation pursuant to Okla. Stat. tit. 21, § 644(J) in Tulsa County District Court Case No. CF-2017-4782. Under Oklahoma law, Domestic Assault and Battery by Strangulation is a felony, punishable by a term of imprisonment exceeding one year. *See* Okla. Stat. tit. 21, §§ 644(H) (effective June 7, 2006), 644(H) (effective March 12, 2009), 644(J) (effective November 1, 2011), 644(J) (effective November 1, 2014).

On August 2, 2022, a grand jury returned an Indictment charging Mr. Mayfield with one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(e)(1). [Doc. 2]. Section 922(g)(1) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). The Indictment alleges that Mr. Mayfield, knowing that he had previously been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a Ruger, Model LCP, .380 caliber pistol, serial number 371411427. [*Id.*].

Mr. Mayfield seeks to dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(1) violates his constitutional right to bear arms as set forth in the Second Amendment to the U.S. Constitution. [Doc. 24]. The government filed a response in opposition. [Doc. 29].

II.   *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)

Prior to considering the parties' arguments, it is necessary to understand the U.S. Supreme Court's recent decision in *Bruen* decision. In *Bruen*, the Court considered a constitutional challenge to New York's firearm licensing regime, which required a person seeking to carry a firearm outside of the home to demonstrate that "proper cause exists" to issue the license. *Bruen*, 142 S. Ct. 2122-23 (citing N.Y. Penal Law Ann. § 400.00). The statute did not define "proper cause," but New York courts interpreted the standard to require the applicant to "demonstrate a special need for self-protection distinguishable from that of the general community." *Bruen*, 142 S. Ct. at 2123 (citing *In re Klenosky v. N.Y.C. Police Dep't,* 428 N.Y.S.2d 256, 257 (1980)).

In considering the constitutionality of the New York licensing regime, the Court first cited its prior holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), that "the Second and Fourteenth Amendments protect an individual

right to keep and bear arms for self-defense," and noted that, "[i]n the years since, the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 142 S. Ct. at 2125. Pursuant to that framework, at the first step, the government bore the burden to "justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Id.* at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). If "the regulated conduct f[ell] beyond the Amendment's original scope," then the analysis ended. *Bruen*, 142 S. Ct. at 2126. However, if the historical evidence was inconclusive or the regulated conduct was not categorically excluded, courts proceeded to the second step, which generally involved analysis of "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (quoting *Kanter*, 919 F.3d at 441). If a "core" Second Amendment right was burdened, courts applied "strict scrutiny," requiring the government to prove the law "[was] narrowly tailored to achieve a compelling governmental interest." *Bruen*, 142 S. Ct. at 2126. "Otherwise, they appl[ied] intermediate scrutiny and consider[ed] whether the Government c[ould] show that the regulation [was] 'substantially related to the achievement of an important governmental interest.'" *Bruen,* 142 S. Ct. at 2126 (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).

In rejecting the two-part means-ends test, the Court characterized it as "one step too many." *Bruen*, 142 S. Ct. at 2127. The Court noted that, while step one "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," the second step was inconsistent with its prior decisions in *Heller* and *McDonald*. *Bruen*, 142 S. Ct. at 2127. Instead, the Court articulated the relevant inquiry succinctly: "[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the

outer bounds of the right to keep and bear arms." *Id.* The Court went on to expound on the analysis, stating,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129-30. Thus, the test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131.

To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 2131-32. The inquiry will often require "reasoning by analogy." *Id.* at 2132. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including both in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. Because self-defense lies at the core of the Second Amendment, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Bruen,* 142 S. Ct. at 2133 (emphasis in original) (quoting *McDonald*, 561 U.S. at 767). Significantly, however, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen,* 142 S. Ct. at 2133 (emphasis in original).

Further, "when it comes to interpreting the Constitution, not all history is created equal."

*Bruen,* 142 S. Ct. at 2136. This is because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen,* 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634-35) (emphasis in original). But the Court acknowledged that subsequent history may be relevant to the inquiry as "'a regular course of practice' can 'liquidate & settle the meaning of' disputed or indeterminate 'terms & phrases' in the Constitution." *Bruen,* 142 S. Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2316, 2326 (2020)). However, "to the extent later history contradicts what the text says, the text controls." *Bruen,* 142 S. Ct. at 2137. Applying these principles, the Court concluded that the New York licensing regime was unconstitutional in that it "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen,* 142 S. Ct. at 2156.

### III.   Second Amendment Analysis

Mr. Mayfield argues that § 922(g)(1) is facially unconstitutional.[1]

#### A.   Presumptive Application of the Second Amendment

Pursuant to *Bruen,* the court first considers whether the Second Amendment's plain text covers Mr. Mayfield's conduct. If so, "the Constitution presumptively protects [his] conduct." *Bruen,* 142 S. Ct. at 2129-30.

The Second Amendment to the U.S. Constitution provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The government contends that, as a felon, Mr. Mayfield does not fall within the scope of "the people" and therefore the plain text of the Second Amendment is inapplicable.[2]

---

[1] Mr. Mayfield does not assert an as-applied challenge. *See* [Doc. 24].

[2] Section 922(g)(1) does not use the term "felon" or "felony," but, instead, states, "[i]t shall be

However, this court has concluded that convicted felons fall within "the people" as contemplated by the Second Amendment's protection. *United States v. Coombes*, No. 22-CR-00189-GKF, — F. Supp. 3d —, 2022 WL 4367056, at *4 (N.D. Okla. Sept. 21, 2022). Although acknowledging the court's prior ruling, the government argues that "this Court was one of the first in the country to examine a post-*Bruen* challenge to 18 U.S.C. § 922(g)(1)." The government directs the court to subsequent decisions that it contends "bear on whether the Second Amendment includes convicted felons within 'the people.'" [Doc. 29, p. 4].

In its response, the government primarily relies on the decision by the United States Court of Appeals for the Third Circuit in *Range v. Att'y Gen. United States of America*, 53 F.4th 262 (3d Cir. 2022). However, that decision has since been vacated for rehearing *en banc*. *Range v. Att'y Gen. United States of America*, 56 F.4th 992 (3d Cir. 2023). Further, while the Third Circuit's analysis is persuasive, the undersigned respectfully believes it is best considered in the context of whether the Nation's tradition of firearm regulation permits the disarmament of convicted felons.[3] Thus, the court incorporates and reaffirms its prior conclusion that convicted felons fall within the scope of "the people" for purposes of the Second Amendment. *See Coombes*,— F. Supp. 3d —, 2022 WL 4367056, at **3-4.

The parties do not dispute that the Ruger, Model LCP, .380 caliber pistol constitutes an "arm" within the Second Amendment's protection. Nor is there any dispute that, by possessing

---

unlawful for any person . . . who has been convicted in any court of, *a crime punishable by imprisonment for a term exceeding one year* . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1) (emphasis added). However, the court has utilized the term "felon" as a shorthand for the sake of brevity.

[3] The Third Circuit acknowledged that, "treating [defendant] as covered 'the Second Amendment's plain text[,]' . . . would 'yield the same result,'" because, based on its analysis of the Second Amendment's plain text, "our Nation's tradition of firearm regulation permits the disarmament of those who committed felony or felony-equivalent offenses." *Range*, 53 F.4th at 284-85 (internal citation omitted).

the pistol, he "kept" the weapon. *See Heller,* 554 U.S. at 582 ("[T]he most natural reading of 'keep Arms' as an individual right unconnected with militia service."). Thus, the Second Amendment presumptively protects Mr. Mayfield's conduct and the government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

      B.      <u>Historical Tradition of Firearm Regulation</u>

In *Coombes*, this court looked to the historical evidence and concluded that § 922(g)'s prohibition of possession of firearms by persons convicted of a crime punishable by a term of imprisonment exceeding one year is "consistent with the Nation's historical tradition of firearm regulation" and the statute is not unconstitutional. *Coombes*,— F. Supp. 3d —, 2022 WL 4367056, at **5-8. Nevertheless, Mr. Mayfield contends that "[t]he government cannot overcome the historical fact that 'no colonial or state law in eighteenth century America formerly restricted the ability of felons to own firearms.'" [Doc. 24, p. 6 (citing Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1374 (2009))]. In response, the government directs the court to the historical analogues and evidence previously cited by the undersigned in *Coombes*. *See* [Doc. 29, pp. 12-13]. The historical evidence has not changed. Mr. Mayfield has not persuaded this court to reverse its prior conclusion, and the court concludes that the government has satisfied its burden.[4]

In his motion, Mr. Mayfield suggests that, in *Coombes*, this court rejected a challenge to the constitutionality of § 922(g)(1) "in part, by equating all convicted felons to non-virtuous persons who have forfeited their right to bear arms . . ." Far from it. In *Coombes*, the defendant

---

[4] Additionally, the court reiterates its conclusion that "the Supreme Court's dicta in *Heller* and *McDonald* arguably bind this district court." *Coombes*,— F. Supp. 3d —, 2022 WL 4367056, at *8.

brought an alternative, "as-applied" challenge to § 922(g)(1), arguing that § 922(g)(1) was unconstitutional as applied to him because felon disarmament laws can only be constitutional as applied to those with violent felony convictions. In addressing that argument, the court assumed that § 922(g)(1) is constitutional only to those with violent felony convictions, but rejected the as-applied challenge because Mr. Coombes had previously been convicted of two violent crimes. *Coombes*,— F. Supp. 3d —, 2022 WL 4367056, at *14.

In contrast, Mr. Mayfield does not bring an as-applied challenge in this case. Rather, he contends that "limiting the application of § 922(g)(1) to those deemed dangerous or who have violent felony records would meet with constitutional vagueness challenges," and would fail to meet due process standards. [Doc. 24, pp. 8-9]. The argument is irrelevant here because Mr. Mayfield has previously been convicted of four violent felonies—all involving domestic violence strangulation. In other words, the court need not consider here whether § 922(g)(1) is constitutional only as to those with violent felony convictions.

## VI.   Conclusion

WHEREFORE, the Motion to Dismiss the Indictment on Second Amendment Grounds [Doc. 24] of defendant Brandon Lee Mayfield is denied.

IT IS SO ORDERED this 6th day of March, 2023.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma